The next case we're calling for argument will be United States v. Bishop. May it please the court, my name is Joe Ryan, and it's my privilege to represent Ronald Bishop on this appeal, and with all due respect to my adversary. Your honors may find they took advantage of the tragic death of Judge Feuerstein and came out with Judge Azraq claiming that Mr. Bishop should serve a consecutive sentence, which they never argued to Judge Feuerstein. Before Judge Feuerstein, they said 10 years is enough. It's three times more than any prior sentence. It's not an insubstantial sentence, and I work with defense counsel, and we're pleading with your honor to go with the plea agreement to give him 10 years. There wasn't one word mentioned about a consecutive sentence, about the Nassau sentence at all. Well, your client had been sentenced in Nassau already, hadn't he? He had been. So you knew that there was a possibility, and you were the attorney, were you not? I was not. I was assigned by Judge Feuerstein on the eve of sentencing to address Mr. Bishop's complaints about his attorney, the CJA attorney, and I resolved those issues. So I was not representing Mr. Bishop throughout the proceedings. I was called on by Judge Feuerstein. I apologize. Thank you. I appreciate that. But you were representing him at the time of sentencing, were you not? I was representing him at the time of sentencing when Judge Feuerstein said, would you stand in for Mr. Bishop, Mr. Ryan, I'm accommodating the court. And she didn't make the sentence consecutive with this date time issue? She didn't say one word about consecutive. It was 10 years. Were you a regular practitioner in federal court? I am. More than 40 years. So the federal laws indicated that the default for it to be concurrent, she had to say something? That's correct. But you didn't require her to determine that? It was not an issue. It was not on the table. We wanted . . . What do you mean not an issue? It was not an issue. I don't understand why it wasn't an issue. It was an issue. I agree with you. It would have been very much on my mind. You can read this transcript. Excuse me. I'm sorry, Judge. It would have been very much on my mind if it was going to be 20 years as opposed to less than that. You can read this sentencing transcript from now until Wednesday. You won't find one mention about the Nassau case. Not one. Whether it was due to inattention . . . I have a hard time. You're blaming the prosecution when you were there. You could have said something yourself. No, I wasn't aware of the Nassau sentence. I had no impact. All right. We're dealing in the dark here. It was only after Mr. Bishop finished the state sentence and came back to the federal court to clean up a judgment that the government now said, no, a consecutive sentence, and they used the same language that they used in the pre-sentence before Judge Boyerstein. This sentence of 10 years, they said, is necessary to protect the public. This is the consecutive sentence. This is an argument made before Judge Azraq that was not made before Judge Boyerstein. Before Judge Azraq, the prosecutor said that what we need here is to protect the public and send another message to Mr. . . . Right, but Mr. Ryan, the information about the Nassau County case was in the pre-sentence report, correct? It was not the sentencing. No. It was nothing about the sentencing. But the fact that there was a pending case . . . Correct. That was in it. So the parties were aware of that. They were aware that it was a pending case, but nobody was aware that the judge in Nassau County had imposed a 10-year sentence and made it consecutive according to state law. Right, but the fact that there was going to be another . . . that there's a sentence that's going to happen, whether people knew the particulars of it or not, it's out there. And so at the time of the federal sentencing, that could have been raised. But you have to look at this from Mr. Bishop's perspective. He's in jail. He's relying on a CJA lawyer. He doesn't follow these cases. Right, but then he's relying on you. No, I wasn't his lawyer. I was his lawyer called in by Judge Boyerstein. You were at the sentencing. I was called in to address his complaints about Mr. Bishop's . . . But you were representing him at sentencing. Is that not correct? At the end of the sentencing, you'll see the transcript that says, Judge Boyerstein . . . Can I . . . I'm sorry, Mr. Ryan, I'm just . . . Yes. Okay. So you represented him . . . The indication of Judge Boyerstein. It does not really matter who . . . Okay. It matters that you were his counsel representing him at the sentencing, correct? And I had . . . yes, correct. That is correct. At the end of the sentencing, you'll see that in the transcript. And I had no idea about the Nassau case, none. Judge Boyerstein knew nothing about it. There's not one word mentioned about it. This is an afterthought. But you just told me it's in the pre-sentence report, correct? No. In the pre-sentence report, they refer to the Hempstead charge. He was caught red-handed selling drugs to a woman. And that was during the course of the federal conspiracy. The PSR doesn't . . . And the probation officer pointed out to the prosecutor in the pre-sentence report that this sale is relevant evidence because it's during the course of the federal conspiracy for which he's going to be sentenced. That's what the probation officer told the prosecutor. The prosecutor said, no, it's not relevant. He just said it's not relevant. The only weight that the PSR gave to this sale in Hempstead was one point, and it was listed on the background to calculate his criminal history. There was no suggestion by the probation department, by the probation officer, that this required some aggravating factor that would require a consecutive sentence or any aggravating factor. It was not an aggravating factor at all. So it was not a prominent concern in the PSR. And that also explains why his lawyer was relying on the prosecutor's plea agreement. The lawyer who represented Mr. Bishop had a plea agreement, and the prosecutor in the sentencing agreement says, after long negotiations we came to this agreement. And that agreement says that he would get 10 years. It was broken down by two counts in the indictment to which he pled guilty. So Judge Feuerstein is there on the bench and listening to the prosecutor saying, I plea with Your Honor. We spent a lot of time negotiating this plea agreement to impose this as a 10-year sentence. More than adequate. More than adequate. Three times more than was ever imposed upon Mr. Bishop. That will deter him from committing crimes again. That's the reality of what Judge Feuerstein was faceless. And the idea that I was responsible for this is wrong. It's dead wrong. And when you read the transcript, you'll see at the end Judge Feuerstein asked me to come in because at that time we had the prosecutor, the defense lawyer, agreeing to a plea agreement and a 10-year sentence, and there was no further issue. The Nassau case wasn't anywhere in this case. And you won't find anything in the federal sentencing before Feuerstein about this. It wasn't raised until after the state. I'm sorry. I think we have your argument, and you've got some rebuttal time. But if I could just flag one thing that I might like you to address on rebuttal is, aside from these issues of just general fairness or who should have raised what, on the merits what the reason is that we should consider this motion. Double jeopardy. Or whatever you'd like to address. The Supreme Court case just came down. On the merits of why a sentence reduction is appropriate. That would be great. All right. Thank you. May it please the Court. Good morning. My name is Meredith Arfat, and I'm an assistant United States attorney in the Eastern District of New York. I represent the United States on this appeal. Let me begin by clarifying some of the statements that were just made by counsel. There is no evidence whatsoever in the record that the government engaged in any efforts to mislead the sentencing court or Judge Azraq in reviewing the appellant's motion for a sentence reduction. And, in fact, the record demonstrates otherwise. So let me begin by pointing out that counsel, in fact, was aware, and the record was clear, as Your Honor pointed out, at the time of sentencing, that the state court case was, at that time, on discharge. The PSR did, in fact, speak specifically about this case, the Nassau County case. It's on A54 of the appellate record. It's paragraph 40 of the PSR. Details that state case. Says that the defendant was convicted following a jury trial. And it says that the sentence had not yet been imposed. Subsequently, the government filed a sentencing memorandum more than three months before sentencing in the case, in which it specifically advised the court that sentence had, since the time of the appellant's guilty plea, been imposed in the state case, and that the defendant had been sentenced to a period of a 10-year incarceratory sentence. That sentencing submission was filed publicly on the docket, and counsel thereby was served with that. At the time of sentencing, it's accurate that counsel stepped in to represent the appellants at Judge Azraq's request, but he was specifically provided with an opportunity for an adjournment and declined the adjournment. He said that he was prepared to proceed. That's on A44 of the transcripts. I'm sorry, of the appendix. So I think with those clarifications, there really is no question that the state court, I'm sorry, that the state court case was known to both Judge Foyersteen and Judge Azraq, and the government's characterization, the language the government used in defending or recommending the 10-year sentence and the federal crimes, which is what was advocated in the government's sentencing submission and at the sentencing hearing, was consistent with the plea transcript. But in explaining why that sentence was appropriate, the government was addressing the 3553A factors. The government's sentencing submission makes that clear. The government was explaining why a 10-year sentence, which was well below the guidelines in this case, was sufficient but not greater than necessary under the circumstances here. That language had nothing to do with whether the sentence should be imposed consecutively or concurrently. And as was pointed out earlier, the default rule under 18 U.S.C. 3584A controls. Under the claim language of that rule, where multiple terms of imprisonment are imposed at different times, unless the court specifies otherwise, the sentences run consecutively. That is what happened here. No one was deceived. There was a default rule in place, and Judge Azraq did not abuse her discretion in finding that Judge Foyersteen was well aware of both the state court sentence and the federal court sentence and that she had elected to impose consecutive sentences by not speaking on the issue. So let me also say that the district court, Judge Azraq, did not abuse her discretion in denying the motion for sentence reduction filed by the appellant, who it's worth noting is a narcotics trafficker, who at the time of his arrest was in possession of an arsenal of firearms, including a semi-automatic rifle and high-capacity magazines. She was well within her discretion in finding that the Section 3553A factors weighed against the appellant's early release given the need to protect the public from further crimes committed by him. The government respectfully submits that this court should affirm the district court's decision on that basis alone. And on that basis alone, no further inquiry is needed. But again, with respect to the analysis of whether Judge Foyersteen intended to impose consecutive sentences, the government respectfully submits that Judge Azraq did not abuse her discretion in finding first that Judge Foyersteen intended to impose consecutive sentences. And also, counsel raises an argument with respect to Section 5G1.3b. I'll note that that argument was not raised below. That argument, I think, therefore, has been waived. This appeal is the first time it's being raised to any court. And accordingly, I think most conservatively, a plain error standard applies. But even based on the record before the sentencing courts, that provision is not applicable. That provision, 5G1.3b, applies where the state court-conducted issue constitutes relevant conduct to the federal conduct. On the record before Judge Foyersteen, that was not the case here. The PSR, as I mentioned before, expressly addressed the state court case. And in the PSR, probation specifically noted that the government's position was that the state court case did not constitute relevant conduct. Probation stated expressly in the report that in the absence of other information, probation is adopting that finding. At no point did the appellant object to that finding. And that finding mattered because it factored into the calculation of the defendant's or the appellant's criminal history. So in calculating the criminal history, it was not relevant conduct, but it did add a point. Even had that point not been there, the criminal history category wouldn't have changed. But it did affect the sentencing calculation. And again, the appellant had ample opportunity to object to that finding. There was no written objection after the PSR was issued. And at the sentencing hearing, Judge Foyersteen specifically asked whether the parties, including appellant's counsel, had any objection to the PSR. The only objection raised was an entirely unrelated objection. In light of that, Judge Foyersteen adopted the PSR. It is the record of this case that the state court conduct does not constitute relevant conduct for purposes of the state court sentence. In light of that, Judge Azraq did not abuse her discretion in refusing to find, or in declining to find, that any of these factors constituted extraordinary and compelling reasons that merit a sentence reduction. With that, unless your honors have any questions, prepare to rely on our papers. All right. All right. Thank you. We have your argument. Thank you. I learned an adversary's argument that you just heard is based upon a false premise. Judge Foyersteen never knew about the Nassau sentence. The lawyer representing Bishop didn't know about the Nassau sentence. The prosecutor knew. He put it in a footnote in a pre-sentence letter that only said that the Nassau court gave a 10-year sentence but didn't talk about consecutive. And in the same submission, he argued that the 10-year sentence that Judge Foyersteen should impose made no mention of consecutive. You won't find anything anywhere in this case about any suggestion about a consecutive sentence. And that is the frustrating part here. It's very unusual when you have a sentencing transcript that doesn't mention the Nassau sentence. That's because nobody addressed it. And the prosecutor, he was aware of it. He put it in a footnote in the last page of his sentencing submission, and he only said it was a 10-year sentence. That was it. He didn't say anything about the Nassau just saying consecutive or anything else. Now, if they had known of the Nassau sentence, then Bishop's lawyer would have used an argument, a strong argument, an effective argument. Then under the sentencing guidelines, 5G1.3b, you must give a concurrent sentence. That argument was never made. And if it had been made, Judge Foyersteen would have been obligated to apply that provision because you can't sentence a man twice for the same criminal conduct. And that's what's happening here. Only in January, on January of this year, 14, the United States Supreme Court reversed the decision of this court unanimously, 9-0. You can't punish a man twice. Can I just ask you with regard to the issue your friend on the other side raised regarding the fact that the PSR did say that the state case was not relevant conduct for purposes of the federal sentencing and that there was no objection to that? The prosecutor said that. And the probation officer felt compelled to accept the prosecutor. But the prosecutor's opinion doesn't control. Whatever the source of that statement was that was in the PSR was not objected to. Right. No, because there was no sentence. The Nassau sentence, the case had not been reduced to a sentence. The sentence in Nassau County was done without Mr. Bishop's presence. He wasn't even there. Mr. Bishop was not there, and that's in the transcript. And his lawyer said, I don't know why he's not here, but you shouldn't give him a consecutive sentence. So the Nassau judge didn't have Mr. Bishop before her, and Judge Feuerstein didn't have any information about the Nassau sentence before Judge Feuerstein. Otherwise, this consecutive and concurrent sentence would be on the table. It would be an open advocacy by both sides. And Bishop had a great argument that it should be a concurrent sentence because this sale took place during the federal conspiracy. It was caught red-handed. And it is frustrating, and I understand Your Honor's frustration, but you can't find in this record that Mr. Bishop was aware that he had a right to challenge this as a concurrent sentence as opposed to a consecutive. You won't find it anywhere. It's an unusual case. It's different, but I ask Your Honors to carefully review the transcript and the letters of submission, our briefs. And I thought there might have been some other point you wanted me to raise, Judge. No, no, that's fine. All right. Now, the Supreme Court has come down with a Barrett decision. I'm sure you're, of course, aware of it, that you can't sentence a man twice, reversing a decision of this court. And I'll give a quick cite to that. That's at 1. We know it. Okay. Thank you. Thank you very much. Have a great day. Thank you. Thank you both. We will reserve decision on this case.